# Schade et al. v. Simpson.

May 25, 1943.

Leo J. Sandmann for appellants.

William S. Heidenberg and Lewis C. Carroll for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

This is an appeal from a judgment enjoining the appellants, Regina Dueringer Schade and Clem G. Schade, her husband, from interfering in any way with appellee or his agents or employees in surveying, grading, and

constructing a highway from property owned by him across two lots owned by appellants to Watterson road in Jefferson county. The controversy stems from deeds to certain lots in Walnut Hills subdivision and the plat of the subdivision recorded in the Jefferson county clerk's office.

On July 14, 1910, the Walnut Hills Realty Company acquired approximately 50 acres of land located about ten miles from the courthouse in Louisville and extending from Watterson road on the north to Bardstown road on the south. The realty company divided the tract into eight lots, each containing from 2¼ to 10¼ acres. Lots 1 and 2 bordered on Bardstown road, and lots 6, 7, and 8 bordered on Watterson road. Lots 3, 4, and 5 were interior lots. On October 3, 1911, the realty company filed a plat of the subdivision in the Jefferson county clerk's office. The recorded plat shows a roadway or avenue, designated Fern Creek avenue, 30 feet wide, extending across lots 2, 3, 4, 5, and 6, and following the meanders of Fern creek. The following indorsement appears on the recorded plat:

"This plat is hereby established as the plat of Walnut Hills Subdivision, being a subdivision of that tract of land conveyed to Walnut Hills Realty Company by deed recorded in Deed Book 721, page 378, in the Jefferson County Court Clerk's Office, and the avenue (s) called Fern Creek Avenue, running from the Bardstown Road to Watterson Road, is hereby established for the use of all the land in said subdivision, but the Walnut Hills Realty Company reserves the right to dedicate the said avenue (s) to public use."

On July 21, 1910, the Walnut Hills Realty Company conveyed lot No. 5 to Regina Dueringer, now Regina Dueringer Schade. The deed contained the following provision:

"The party of the first part (grantor) reserves the right for itself, its successors or assigns, at any time it deems advisable to construct upon the Western portion of the hereinabove described tract of land, a roadway or avenue which shall follow the course of Fern Creek on the East bank thereof and as near said Creek as practical."

Lot No. 6, which fronts on Watterson road and ad-

joins lot No. 5 on the south, was conveyed to Beatrice Armstrong on November 11, 1911. The deed contained this provision:

> "An easement is hereby retained over so much of the land that lies within thirty foot roadway as shown on plat recorded in Plat Book 3, page —, in the office of the Clerk of County Court for the use of the public as a roadway, and the party of the first part hereby reserves the right to open up said roadway at any time they deem fit to do so."

Beatrice Armstrong conveyed lot No. 6 to Clem G. Schade and Regina Dueringer Schade on April 29, 1927. The deed contained this:

> "Being Lot 6, as shown on Plat of Walnut Hills Subdivision recorded in Plat and Subdivision Book 3, page 11, in aforesaid office, and being the same property conveyed to said Beatrice Armstrong by deed dated November —, 1911, recorded in Deed Book 753, page 14, in said office, and this conveyance is made subject to the roadway and creek shown on plat referred to, and easement reserved in the aforesaid deed to Beatrice Armstrong."

The Schades built a home on lot No. 6, where they now reside. William E. Simpson became the owner of lots 3, 4, 7, and 8 in 1913. In 1939 he conveyed to Mrs. H. G. Jenkins two acres fronting on Watterson road. The part sold was the northwest corner of lot No. 8. Walnut Hills Realty Company sold all the lots in the subdivision, and the corporation was dissolved in 1915. Houses have been built on lots 6, 7, and 8 fronting on Watterson road and lot 1 fronting on Bardstown road. The roadway designated on the plat of Walnut Hills subdivision as Fern Creek avenue has never been constructed. William E. Simpson proposes to build a home on lot No. 3 and, according to his testimony, he has a purchaser for lot No. 4 who proposes to build a home thereon. Simpson made preparations to construct Fern Creek avenue from the center of lot 3 across lot 4 owned by him and lots 5 and 6 owned by appellants to Watterson road. Appellants objected, and Simpson brought this suit to enjoin them from interfering with the construction of the road. The case was referred to a commissioner who made an exhaustive report which concluded as follows:

> "On the whole case your commissioner recommends

that plaintiff has an easement over defendants' property as shown in the plat of Walnut Hills Subdivision, which easement is for the purpose of building a roadway to lots 3 and 4 owned by him at any time he sees fit to do so and that he is entitled to an injunction against the defendants preventing them from interfering with this right as prayed for in his petition.''

Exceptions to the report were overruled, the report, was confirmed, and a judgment in accordance with the commissioner's recommendations was entered.

Appellants contend that they have acquired title to the easement across lots 5 and 6 by adverse possession; that appellee and his predecessors in title abandoned the easement by nonuser, and that by building the road only from Watterson road to lot No. 3 instead of all the way to Bardstown road appellee will not conform to the easement as set out in the recorded plat. The easement across appellants' lots is an easement appurtenant to lots 3 and 4 and appellee, as the grantee of these lots, became entitled to all rights appurtenant thereto, including the right of way easement, although the easement was not mentioned in his deeds. Hopper v. Beddow, 283 Ky. 337, 141 S. W. (2d) 278; 17 Am. Jur., Easements, Section 29. The reservations in the deeds to appellants and the establishment of the roadway in the recorded plat were for the purpose of providing an outlet to the public highway from the interior lots. Lots 3 and 4 owned by appellee have never been improved, and the need for constructing Fern Creek avenue, as established on the plat of the subdivision, had not arisen prior to appellee's decision in 1940 to built a home on lot 3. Appellants' use of their lots 5 and 6 did not amount to adverse possession of the roadway which existed only on paper. Adverse possession and use for the prescriptive period will terminate an easement, but, to be effective, adverse possession of a right of way by the servient owner must be of the same character required to obtain title to real estate and the use must be wholly inconsistent with the right to enjoy the easement and amount to an ouster of the dominant owner. Brookshire v. Harp, 186 Ky. 217, 216 S. W. 379; Morris v. Daniel, 183 Ky. 780, 210 S. W. 668. Nothing done by appellants amounted to such an adverse and hostile use as would start the statute of limitations running until they objected to the construction of the

road. The proof likewise fails to show abandonment of the easement by appellee or his predecessors in title. It merely shows nonuser which alone does not create an abandonment of an easement which has been acquired by grant. Morris v. Daniel, 183 Ky. 780, 210 S. W. 668; Curran v. City of Louisville, 83 Ky. 628; Johnson v. Clark, 57 S. W. 474, 22 Ky. Law Rep. 418. In 17 Am. Jur., Easements, Section 141, it is said:

"The cases are agreed that at least where a right of way or other easement is created by grant, deed, or reservation, no duty is thereby cast upon the owner of the dominant estate thus created to make use thereof or enjoy the same as a condition to the right to retain his interest therein; the mere nonuser of an easement will not extinguish it. In fact, it is held that even nonuser for the length of the prescriptive period does not operate to extinguish an easement created by grant, deed, or reservation."

Appellants cite Sandy River Coal Company v. Champion Bridge Company, 243 Ky. 424, 48 S. W. (2d) 1062, 1064, as holding that nonuser for the limitation period is sufficient to prove abandonment of the right of way. The case does not so hold. In the opinion it was said that "nonuser alone, at least short of the period of the statute of limitation, is not sufficient to prove abandonment of a right of way." The statement was unnecessary to the decision of the case, but a reading of the entire opinion shows that it is in accord with the rule announced in the authorities heretofore cited. It held that nonuser must be coupled with other acts evidencing an intention to abandon.

There is no merit in appellant's contention that appellee will not conform to the easement as set out in the recorded plat unless he constructs Fern Creek avenue all the way from Watterson road to Bardstown road. Appellants' lots are the servient estate, and appellee is entitled to a right of way over them for the benefit of lots 3 and 4. They may not complain because he does not exercise his right to construct a passway to Bardstown road across lot No. 2 which also is the servient estate. The appellee may use less than the entire easement. Stegman v. City of Ft. Thomas, 273 Ky. 309, 116 S. W. (2d) 649.

The judgment is affirmed.